## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JAMES LYNCH, | : | |
| | : | |
| Plaintiff, | : | CIVIL CASE NO. 23-4445 |
| | : | |
| v. | : | |
| | : | |
| | : | PLAINTIFF REQUESTS |
| TASTY BAKING COMPANY individually and | : | TRIAL BY JURY |
| d/b/a TASTY CAKE; AMBER BETTIE, JACK | : | |
| GARRETT; CHRISTINE JOHNSTON; and | : | |
| HALEY ANGELINE, | : | |
| | : | |
| Defendants, | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, James Lynch, by and through undersigned counsel hereby files this Civil Action Complaint against Defendant, Tasty Baking Company, Haley Angeline Jack Garrett, Christine Johnston, and Amber Bettie (collectively "Defendants") and avers the following:

## PARTIES

1.    Plaintiff, James Lynch, ("Mr. Lynch" or "Plaintiff") is an adult, male who resides in the Commonwealth of Pennsylvania with an address for purposes of correspondence at 428 Railroad Avenue, Ambler, Pennsylvania 19002.

2.    Defendant, Tasty Baking Company, individually and d/b/a as Tasty Cake ("Tasty Cake" or "Defendants") is a miscellaneous corporation organized and existing by virtue of the laws of the Commonwealth of Pennsylvania with its principal place of business located at 4300 South 26th Street, Philadelphia, PA 19112.

3.    Defendant, Jack Garrett is a male individual with a business address for the purposes of service at 4300 South 26th Street, Philadelphia, PA 19112.

4.    Defendant, Haley Angeline is a female individual with a business address for the purposes of service at 4300 South 26th Street, Philadelphia, PA 19112.

5.    Defendant, Christine Johnson is a female individual with a business address for the purposes of service at 4300 South 26th Street, Philadelphia, PA 19112.

6.    Defendant, Amber Bettie is a female individual with a business address for the purposes of service at 4300 South 26th Street, Philadelphia, PA 19112.

7.    At all times relevant to this civil action, the individual Defendants, Jack Garrett, Christine Johnson, and Amber Bettie had supervisory authority over Plaintiff, James Lynch, and violated Plaintiff's rights under Section 1981.

8.    At all times relevant to this civil action, the individual Defendants, Haley Angeline, Jack Garrett, Christine Johnson, and Amber Bettie had supervisory authority such that the individual Defendants had the authority to subject Mr. Lynch to a tangible employment action by changing the terms and conditions of Mr. Lynch's employment.

9.    At all times relevant to this civil action Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendant.

## NATURE OF THE CASE

10.    Plaintiff. James Lynch complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); 42 U.S.C. § 1981; the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et. seq. ("PHRA"); under the laws of the

Commonwealth of Pennsylvania, and under the Philadelphia Fair Practices Ordinance, § 9-1100 et. seq. ("PFPO") and seeks damages to redress injuries Plaintiff suffered as a result of discrimination and retaliation which ultimately led to Plaintiff's unlawful termination by her employer.

## JURISDICTION AND VENUE

11.     The action involves a Questions of Federal Law under 42 U.S.C. ¶ 1981 and Title VII of the Civil Rights Act of 1964, both of which provide this Court with Federal Question jurisdiction.

12.     The honorable Court also had supplemental jurisdiction over the Commonwealth Law Causes of Action and the actions under the Philadelphia Fair Practices Ordinance.

13.     Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendant and worked in the Philadelphia County in the Commonwealth of Pennsylvania where the discrimination, harassment and hostile work environment complied of occurred.

14.     On or around November 11, 2022, PLAINTIFF filed a Charge of Discrimination (#530-2023-01021) with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.

15.     On August 14, 2023, the EEOC issued and sent a Dismissal and Notice of Rights (#530-2023-01021) to PLAINTIFF confirming that Plaintiff's civil action complaint must be filed within ninety (90) days of Dismissal and Notice of Rights.

16.     This action is hereby commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights which was dated August 14, 2023, and mailed to Plaintiff by regular mail August 14, 2023.

## MATERIAL FACTS

17.     At all times relevant to this civil action, Plaintiff was an adult male who was born in the United States of America and was employed by Defendants, Tasty Baking Company, individually and d/b/a as Tasty Cake.

18.     Plaintiff James Lynch is an African American male who files this lawsuit due to discrimination and harassment in the workplace to which Plaintiff was subjected due to his race.

19.     On or around September 19, 2019, Plaintiff, James Lynch began his employment with Defendants as a Package Inspector.

20.     At all times relevant, Plaintiff, James Lynch, worked in Defendants' Philadelphia headquarters, located at 4300 South 26th Street, Philadelphia, Pennsylvania 19112.

21.     During his employment, Plaintiff, James Lynch was subjected to discrimination and harassment in the workplace due to his race.

22.     Plaintiff was also subjected to discrimination and harassment in the workplace due to his religion.

23.     At all times relevant to this civil action, Plaintiff was a black, African American male and member of the Muslim religion.

24.     When Plaintiff asked to pray, Plaintiff was forced to pray in a janitorial closet.

25.     Plaintiff requested religious accommodations so that Plaintiff could pray in accordance with his religion.

26.     Similarly situated, white, Caucasian coworkers and/or coworkers who were members of the Christian religion were not forced to pray in a closet.

27.     Plaintiff was forced to clock out in order to pray for five minutes, twice during each shift.

28.    Plaintiff was repeatedly targeted for adverse action including suspension without pay and termination due to Plaintiff's membership in a protected class based upon his race and religion and due to Plaintiff's reports of and opposition to the discrimination and harassment in the workplace.

29.    Plaintiff was threatened with discipline and subjected to discipline in the workplace based on Plaintiff's membership in a protected class.

30.    Plaintiff was constantly subjected to disrespectful, abusive conduct and comments from Defendants including the individually named Defendants, designed to intimidate Plaintiff with threats that would lead to Plaintiff's unlawful termination from employment.

31.    Defendants ultimately terminated Plaintiff based on an outright lie that Defendants including the individual Defendants presented in their attempt to justify the disparate treatment to which Plaintiff was subjected by Defendants.

32.    Defendants stated reason for Plaintiff's termination is mere pretext, presented for the unlawful purpose of masking their discriminatory intent.

33.    Plaintiff was falsely accused of physically pushing another employee.

34.    At no time did Plaintiff push another employee and Defendants intentionally lied about this in their discriminatory effort to justify an unlawful termination from employment.

35.    Defendant, Jack Garret was known throughout Tasty Cake to subject employees to discrimination based on their race including making threats against employees because of their race.

36.    Defendants singled Plaintiff out for disparate treatment, accusing Plaintiff of instigating a physical attack.

37.     Plaintiff was physically attacked by another employee who was not suspended, terminated, or even disciplined for the physical attack.

38.     The name of the employee who physically attacked Plaintiff was Isaac Cleavers.

39.     Isaac Cleavers is not a not member of the Muslin religion.

40.     Isaac Cleavers was not scheduled to work in the department Isaac Cleavers visited at the time of the physical attack to which Plaintiff was subjected by Isaac Cleavers.

41.     Isaac Cleavers did not have a disability under the Americans with Disabilities Act ("ADA"), nor did Isaac Cleavers utilize rights under the Family and Medical Leave Act ("FMLA").

42.     At all times relevant to this Charge, Plaintiff presented with a disability under the ADA.

43.     Plaintiff's disability is related to a left knee injury that Plaintiff sustained sometime around 2019.

44.     Plaintiff was shot in the left knee by an individual carrying a handgun.

45.     Since then, Plaintiff has experienced serious medical impairments to Plaintiff's left knee that substantially limits one or more major life activities.

46.     Major life activities substantially affected by Plaintiff's left knee injury include walking, running, exercising, sleeping, and working.

47.     Plaintiff asked for and received medical leave under the FMLA and was approved for intermittent medical leave.

48.     Defendant, Amber Bettie expressed annoyance and frustration when Plaintiff was forced to use his intermittent medical leave due to the left knee injury.

6

49.    Defendants have a pattern and practice of interfering with employees' rights under the FMLA and retaliating against employees who request medical leave.

50.    Defendant, Jack Garrett subjected Plaintiff to lies intended to subject Plaintiff to disparate treatment.

51.    Defendant, Jack Garrett intentionally misled Plaintiff and other employees including a Shop Steward in his attempt to falsely justify the illegal conduct of Defendants.

52.    Defendants intentionally lied about video footage which exonerated Plaintiff and refused to allow Plaintiff to even view the video footage.

53.    Defendants subjected Plaintiff to disparate treatment due to gender as there have been several instances of outright physical violence perpetrated by female employees.

54.    Female employees who violate Defendants so-called policies for physical violence in the workplace are not subjected to disparate treatment including termination, however, Plaintiff was subjected to disparate treatment including termination for far less serious accusations.

55.    Plaintiff is no longer employed today due to Defendants singling Plaintiff out for termination based on unlawful discriminatory intent.

56.    Defendants subjected Plaintiff to nonstop abusive, discriminatory conduct and comments such that Plaintiff was forced to endure a hostile work environment.

57.    The hostile discriminatory conduct and comments were severe and pervasive and had the purpose and effect of unreasonably interfering with Plaintiff's work environment.

58.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

59.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

60.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

61.    Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

62.    Plaintiff has further experienced severe emotional and physical distress.

63.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

64.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

65.    Defendants at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

66.    Defendants discriminatory conduct was severe and pervasive, created a hostile work environment for Plaintiff.

67.    The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

68.    Upon information and belief, Defendants' discrimination and retaliation will continue after the date of this complaint and claimant hereby makes a claim for all continuing discrimination and retaliation.

69.    Plaintiff further claims constructive and/or actual discharge to the extent she is terminated from his position as a result of the retaliation and harassment.

70.     Plaintiff claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

71.     Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

72.     Plaintiff was subjected to adverse employment actions including being denied pay raises and promotions, having his hours reduced and other changes to the terms and conditions of Plaintiff's employment.

**COUNT I**
**UNDER FEDERAL LAW**
**S.C. SECTION 1981**
**(against all defendants)**

73.     Plaintiff hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

74.     42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

75.     Plaintiff, as a member of the African American race was discriminated against by Defendant because of his race and national origin, as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

76. Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendant's unlawful employment practices.

77. At all times relevant to this civil action, Plaintiff was subjected to an abusive and hostile work environment due being a member of the African American race.

78. Mr. Lynch was subjected to disparate treatment including being intentionally called crazy and put out of work because or Mr. Lynch's race and because of Mr. Lynch's reports of discrimination and harassment in the workplace.

79. Plaintiff was discriminated against by Defendants because of his race in violation of 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

80. Plaintiff also claims unlawful retaliation under 42 U.S.C. Section 1981 for his opposition to Defendants' unlawful employment practices.

81. Plaintiff claims hostile work environment under 42 U.S.C. Section 1981.

82. The discrimination and harassment due to Plaintiff's race was severe and pervasive and interfered with Plaintiff's work environment.

83. Similarly situated white, Caucasian coworkers were not singled out and subjected to nonstop coercion, threats, and abuse by Defendants.

84. Defendants had a history of subjecting employees to abusive conduct based on race and employees like Plaintiff who were members of a certain race were singled out and subjected to a different set of policies then other employees who were not members of Plaintiff's protected class.

85. The discriminatory conduct was severe and pervasive both objectively and subjectively.

86. Plaintiff claims disparate treatment under 42 U.S.C. Section 1981.

87.     Plaintiff was subjected to discrimination based on race which led to the adverse employment actions described herein.

88.     Plaintiff missed time from work and suffered economic losses due to Defendants' illegal race-based conduct.

89.     Defendants have no legitimate nondiscriminatory reason for the disparate treatment to which Plaintiff was subjected.

90.     The disparate treatment includes illegal suspensions, time Plaintiff was forced to miss work due to the emotional distress caused by the material changes to the terms and conditions of Plaintiff's employment.

91.     Plaintiff was subjected to violations of Section 1981, when Defendants subjected Plaintiff to disparate treatment, hostile work environment and retaliation.

92.     Plaintiff's claims under Section 1981 are based on the fact that Plaintiff belongs to a racial minority.

93.     During the course and scope of Plaintiff's employment, Defendants intentionally subjected Plaintiff to discrimination and harassment in the workplace because of Plaintiff's race.

94.     Plaintiff was subjected to continuous conduct race-based and comments described within this civil action complaint in detail that were specifically and intentionally based on race.

95.     The race-based discrimination and harassment in the workplace to which Plaintiff, was subjected occurred with severity and frequency such that Plaintiff was subjected to a hostile work environment due to the severity and pervasiveness of the abusive, race-based discriminatory comments and conduct.

96.     The intentional discrimination and harassment in the workplace that was based on Plaintiff's race had the purpose and effect of unreasonably interfering with Plaintiff's work

11

environment such that Defendants materially changed the terms and conditions of Plaintiff's work environment.

97.    The discrimination in the workplace led to Plaintiff being deprived the ability to ever work for Defendant again.

98.    The discrimination in the workplace to which Plaintiff was subjected because of his race led to Plaintiff being deprived material aspects of Plaintiff's employment that other employees who were not members of Plaintiff's race received.

99.    Plaintiff was singled out and subjected to discrimination because of his race and Plaintiff has been intentionally harmed by this discrimination such that Plaintiff has been deprived money that Plaintiff should have been paid but for the intentional discrimination.

100.    Plaintiff's claims under Section 1981 are to redress the injuries to which Plaintiff has been subjected by Defendants including injuries caused by disparate, race-based treatment.

101.    Plaintiff's claims under Section 1981 is to redress the injuries to which Plaintiff has been subjected by Defendants including injuries caused by the ongoing, severe and pervasive hostile work environment.

102.    Plaintiff's claims under Section 1981 are to redress the injuries to which Plaintiff has been subjected by Defendants including injuries caused by Defendants' retaliation which continues to the present and includes retaliation based on Plaintiff asserting his rights to be free of a workplace that is permeated with race-based discrimination and harassment in the workplace.

103.    Plaintiff is petrified to return to ever work because of the nonstop coercion, threats, and intimidation to which Plaintiff was subjected by Defendants including the individually named Defendants.

104.    Congress enacted the Civil Rights Act of 1991, which was designed to supersede

Patterson, see Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383, 124 S.Ct. 1836, 158 L.Ed.2d 645, by explicitly defining § 1981's scope to include post-contract-formation conduct, § 1981(b). (4) Since 1991, the Federal Courts of Appeals have uniformly interpreted § 1981 as encompassing retaliation actions. Sullivan, as interpreted by Jackson, as well as a long line of related cases where the Court construes §§ 1981 and 1982 similarly, lead to the conclusion that the view that § 1981 encompasses retaliation claims is well embedded in the law. Stare decisis considerations strongly support the Court's adherence to that view. Such considerations impose a considerable burden on those who would seek a different interpretation that would necessarily unsettle many Court precedents. Pp. 1954 – 1958. CBOCS W., Inc. v. Humphries, 553 U.S. 442, 128 S. Ct. 1951, 1953, 170 L. Ed. 2d 864 (2008).

105.    42 U.S.C. § 1981 and specifically § 1981(a), and subsection, (b), defines what it means to "make and enforce contracts" under the law:

> 'Make and enforce contracts' defined:  "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

106.    Plaintiff's claims under § 1981 are based on Defendants' race-based conduct and comments and race-based discrimination that violated Plaintiff's employment contract through ongoing, continuous harassment and failing to treat Plaintiff in the same manner to which Plaintiff's similarly situated coworkers who were not members of Plaintiff's race were treated, which includes lost benefits, lost pay, lost promotions, and other losses which are identified herein.

107.    The Supreme Court of the United States has concluded that, "Among other things, it would "ensure that Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race." Ibid. (emphasis added). … It added that the protections that

subsection (b) provided, in "the context of employment discrimination ... would include, but not be limited to, claims of harassment, discharge, demotion, promotion, transfer, retaliation, and hiring." Id., at 92 *451 emphasis added). It also said that the new law "would restore rights to sue for such retaliatory conduct." Id., at 93, n. 92.  CBOCS W., Inc. v. Humphries, 553 U.S. 442, 450–51, 128 S. Ct. 1951, 1957, 170 L. Ed. 2d 864 (2008).

108.    Accordingly, Plaintiff's claims under Section 1981 are based on Defendants' intentional harassment of Plaintiff due to Plaintiff's race and Plaintiff suffering damages due to lost pay, lost benefits and due to Defendants' retaliation because Plaintiff engaged in protected activity and has attempted to vindicate his rights under the law.

109.    Defendants specifically singled Plaintiff out because of Plaintiff's race and subjected Plaintiff to severe and pervasive race-based comments which were designed to be abusive and to subject Plaintiff to an abusive working environment.

110.    Plaintiff reported the discrimination and was subjected to a ratcheting up of the race-based discrimination which at all times was intentional discrimination that was directly related to Plaintiff's race.

111.    Plaintiff has been singled out and treated differently than other employees in the same position as Plaintiff and were not members of Plaintiff's race.

112.    This includes Defendants' refusal to increase Plaintiff's compensation in terms of Plaintiff's hourly pay.

113.    This includes subjecting Plaintiff to material changes in the terms and conditions of Plaintiff's employment.

## COUNT II
## DISCRIMINATION UNDER TITLE VII
## HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT
### (against Tasty Cake)

114.    Plaintiff hereby incorporates all allegations contained in the paragraphs above as if they were set forth at length below.

115.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race and gender.

116.    SEC. 2000e-2. *[Section 703]* states as follows:

> (a) Employer practices
> It shall be an unlawful employment practice for an employer -
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

117.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his race, religion, and gender.

118.    The discrimination and harassment described above and incorporated into Count Five was severe and pervasive and created a hostile work environment for Plaintiff.

119.    Plaintiff was terminated due to Defendants discrimination and harassment in the workplace.

120.    Plaintiff was subjected to non-stop, pervasive, harassment that began when Jack Garret began his employment for Defendants and continued until Plaintiff's unlawful termination.

121.    Defendants subjected Plaintiff to discrimination and harassment due to Plaintiff's race, gender, and religion.

122.    Plaintiff claims a hostile work environment due to the ongoing, nonstop, continuous discrimination and harassment in the workplace that began when Jack Garret began his employment for Defendants and continued until Plaintiff was unlawfully terminated.

123.    Plaintiff claims disparate treatment subject to every adverse employment action to which Plaintiff was subjected by Defendants.

124.    Any so-called "legitimate nondiscriminatory reason" offered by Defendants in an attempt to explain-away the adverse employment action is mere pretext.

125.    Plaintiff's disparate treatment case is for adverse employment actions that occurred including Plaintiff's termination from employment.

126.    These adverse employment actions include Plaintiff's termination from employment.

127.    Plaintiff's disparate treatment claim is only based on adverse employment actions that occurred including Plaintiff's termination from employment.

128.    Plaintiff's hostile work environment claim is based on a continuing violation theory and therefore includes all illegal comments and conduct that occurred because Defendants subjected Plaintiff to severe and pervasive conduct based on Plaintiff's race and religion.

**COUNT III**
**RETALIATION UNDER TITLE VII**
**(against Tasty Cake)**

129.    Plaintiff hereby incorporates all allegations contained in the paragraphs above as if they were set forth at length below.

130.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter.

131.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of his opposition to and reporting of the unlawful employment practices of Defendants.

132.    Plaintiff engaged in protected activity and was subjected to adverse employment actions, thereafter, as explained above.

133.    Plaintiff claims retaliation subject to every adverse employment action to which Plaintiff was subjected by Defendants.

134.    Any so-called "legitimate nondiscriminatory reason" offered by Defendants in an attempt to explain-away the adverse employment action is mere pretext.

135.    Part of Plaintiff's retaliation claim is the ratcheting up of the hostile work environment to which Plaintiff was subjected.

136.    Therefore, part of Plaintiff's retaliation claims is based on the continuing violations theory such that it is connected to a hostile work environment claim.

**COUNT IV**
**DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT**
**(against Tasty Cake)**

137.    Plaintiff hereby incorporates all allegations contained in the paragraphs above as if they were set forth at length below.

138.    Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

139.    Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

140.    Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability.

141.    Defendants refused to provide reasonable accommodations and refused to engage Plaintiff in an interactive process to discuss the same.

142.    As such, Plaintiff has been damaged as set forth herein.

**COUNT V**
**RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT**
**(against Tasty Cake)**

143.    Plaintiff hereby incorporates all allegations contained in the paragraphs above as if they were set forth at length below.

144.    Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

145.    Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter IV, Section 12203, Discrimination [Section 102] states:

(a) "(a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) (b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

146.    Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff due to Plaintiff's disability and/or because of his need for reasonable accommodations and/or due to his reports of discrimination and harassment in the workplace.

147.    As such, Plaintiff has been damaged as set forth herein.

148.    Plaintiff was singled out and subjected to retaliation due to Plaintiff's requests for reasonable accommodations.

**COUNT VI**
**DISCRIMINATION UNDER STATE LAW**
**(against Tasty Cake)**

149.    Plaintiff hereby incorporates all allegations contained in the paragraphs above as if they were set forth at length below.

150.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

151.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's disability and/or due to his complaints of race discrimination/harassment.

152.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

**COUNT VII**
**RETALIATION UNDER STATE LAW**
**(against all Defendants)**

153.    Plaintiff hereby incorporates all allegations contained in the paragraphs above as if they were set forth at length below.

154.     PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

155.     Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**COUNT VIII**
**DISCRIMINATION UNDER STATE LAW**
**(against individual Defendants only)**

156.     Plaintiff hereby incorporates all allegations contained in the paragraphs above as if they were set forth at length below.

157.     PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

158.     Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## COUNT IX
## DISCRIMINATION UNDER PHILADELPHIA FAIR PRACTICES ORDINANCE
### (against Tasty Cake)

159.    Plaintiff, hereby incorporates all allegations contained in the paragraphs above as if they were set forth at length below.

160.    The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice:  "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

161.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's disability.

162.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.  Plaintiff claims violations of the Philadelphia Fair Practice Ordnance due to Defendants' discrimination against Plaintiff due to Plaintiff's race, color and gender and disability.

22

**COUNT X**
**RETALIATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**(against all Defendants)**

303.    Plaintiff hereby incorporates all allegations contained in the paragraphs above.

304.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: "For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

305.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**COUNT XI**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**(against individual Defendants only)**

306.    Plaintiff hereby incorporates all allegations contained in the paragraphs above.

307.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provided that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

308.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

By:    /s/Seth D. Carson
       Seth D. Carson, Esquire
       1835 Market Street, Suite 2950
       Philadelphia, Pennsylvania 19103
       Phone: 215.391.4790
       Email: Seth@dereksmithlaw.com
       *Attorney for Plaintiff, James Lynch Sr.*

Dated: November 12, 2023