**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES LYNCH, <br><br>                  Plaintiff, <br><br> v. <br><br> TASTY BAKING COMPANY, <br><br>                Defendants. | Civil Action No. 2:23-cv-04445-GJP |

**PLAINTIFF, JAMES LYNCH'S MEMORANDUM OF FACT**
**AND LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, James Lynch ("Mr. Lynch" or "Plaintiff") files this Opposition to Defendants, Tasty Baking Company ("Tasty Cake" or "Defendant"), Amber Beattie ("Ms. Beattie"). Jack Garrett ("Mr. Garrett"), Christine Johnston ("Ms. Johnston"), and Hayley Angeline ("Ms. Angeline") (collectively "Defendants") Motion to Dismiss.   For the reasons set forth below, Defendants' Motion to Dismiss Plaintiff's Complaint should be denied.

## I.      INTRODUCTION

Plaintiff, James Lynch ("Lynch" or "Plaintiff"), a black, Muslim, male, filed a civil action lawsuit against Tasty Baking Company.  Plaintiff's complaint includes the following Counts: Count 1: § 1981 race discrimination, Count 2: Title VII religion and race discrimination, Count 3: Title VII retaliation, Count 4: Americans with Disabilities Act ("ADA"), Count 5: ADA retaliation, Count 6, 7, 8 for discrimination, retaliation, and aiding and abetting, respectively, under the Pennsylvania Human Relations Act, and Counts 9, 10, 11 are discrimination, retaliation and aiding and abetting, respectively, under the Philadelphia Fair Practices Ordinance.

Defendants' second Motion to Dismiss mirrors the Court's Order on Defendants' first Motion to Dismiss.  Defendants argue the amended Complaint "maintains the flaws of the initial Complaint and continues to rely on conclusory and formulaic recitations of the legal elements…" (Doc. 15-1).  The Order on Defendants' first Motion to Dismiss described the Complaint as "scattershot, meandering and largely conclusory." (Doc.13).  Plaintiff filed the amended Complaint on March 20, 2024, to cure the issues identified by the Cout in Plaintiff's initial complaint.  *See* (ECF, Doc. 13).  Plaintiff began by describing the work environment at Tasty Cake.  Plaintiff then identified witnesses of Jack Garrett and Amber Bettie's harassment.

Prima facie elements are an evidentiary standard not relevant at the pleading stage.  At the pleading stage a plaintiff must "raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

> "To state a claim under Title VII … Plaintiff must allege: (1) … protected class; (2) … qualified …; (3) … adverse employment action; and (4) … inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). ***Plaintiff need not convince the Court of any of these elements at the motion to dismiss stage*** but must submit more than "the naked assertion" that he suffered an adverse employment action because of his membership in a protected class." *See Santos v. Iron Mountain Film & Sound*, 593 F. App'x 117, 119 (3d Cir. 2014); *Umuhoza v. Pinnacle Rehab. Health Ctr.*, 2024 U.S. Dist. LEXIS 40894, *4-5.

Plaintiff's amended Complaint satisfies the prima facie elements. (Emphasis added).

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (*quoting*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). At bottom, "[t]he

complaint must state enough facts to raise a reasonable expectation that discovery will reveal

evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech.*

*Charter Sch. Inc*., 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted); Watson

v. Dep't of Servs. for Children, 2012 U.S. Dist. LEXIS 45347, *7-8.

### III.    ARGUMENT

**A.  <u>Plaintiff's claims of race discrimination under § 1981, Title VII of the Civil Rights Act, the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance  are well pled</u>**

Plaintiff's complaint should not be tested with the prima facie elements.  *Accord See*

*Jeffery v. Erie Cnty.,* 2024 U.S. Dist. LEXIS 52856, *9.

> "… Defendants substantially overstate the requirements of stating a prima facie case at the pleading stage. "[T]he McDonnell Douglas framework does not mandate that a plaintiff prove a prima facie case of age discrimination in order to survive a motion to dismiss." Smith v. DeJoy, 2022 U.S. Dist. LEXIS 207142, 2022 WL 16950447, at *4 (W.D. Pa. Nov. 15, 2022), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Instead, "[s]he must allege enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." Id. Plaintiff has done so here."

Plaintiff uses this evidentiary standard to demonstrate the sufficiency of his Frist

Amended Complaint.   Plaintiff's race discrimination claims are Counts I, II, VI, and IX, under §

1981, Title VII, the PHRA and the PFPO, are supported by a detailed description of Jack Garret,

Ambert Better, Christine Johnston, and Haley Angeline's discrimination and harassment in the

workplace and retaliation. *See Generally Plaintiff's First Amended Complaint*. (Doc. 14).

Title VII of the Civil Rights Act of 1964 makes it illegal to "discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  The PHRA makes it unlawful "[f]or any employer because of the [employee's] race . . . to . . . discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract . . . ." 43 Pa. C.S. § 955(a).   Section 1981 guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts." 42 U.S.C. § 1981(a). The same framework is used to evaluate employment discrimination claims brought under Title VII, Section 1981, and the PHRA, *Jones v. Sch. Dist. of Phila*., 198 F.3d 403, 410 (3d Cir. 1999); *Branch v. Temple Univ*., 554 F. Supp.3d 642, 648 (E.D. Pa. 2021).

To establish the prima facie case of employment discrimination, a plaintiff must show: (1) he's "a member of a protected class;" (2) qualified for his position; (3) "suffered an adverse employment action;" and, (4) … circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

Plaintiff, James Lynch ("Mr. Lynch") is a member of the black, African American race. (Doc. 14, ¶¶ 23, 30, 131).  Mr. Lynch began his employment with Defendant, Tasty Baking Company on September 19, 2019, and worked as a Package Inspector on factory floor until August 2022. *Id*. ¶¶ 26, 74.   Mr. Lynch was terminated from his employment.  51, 68, 111, 182, 184.  Prior to the termination, Mr. Lynch was targeted false accusations that resulted in discipline including a suspension without pay. ¶51.  Accordingly, Plaintiff has established that he was qualified for his job and that he suffered more than one adverse employment action.   To satisfy the fourth element, Plaintiff must plead facts that give rise to an inference of discriminatory intent.

To establish a prima facie case of disparate treatment, an employee must set out four elements, the last of which is that she suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination, such as where the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).   For example, a plaintiff may meet this fourth element by presenting evidence that similarly situated employees outside the protected class were treated more favorably. *Cooper v. Thomas Jefferson Univ. Hosp*., 743 Fed. Appx. 499, 502.

But comparing similarly situated employees is just one of several ways to satisfy the inference of discrimination.   A plaintiff is not required to identify a similarly situated white comparator to prove a discrimination claim, so long as [he] can establish an inference of unlawful discrimination through other means. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc*., 333 F.3d 536, 545-46 (4th Cir. 2003). We "may infer discriminatory intent from evidence of a general pattern of racial discrimination in the practices of a defendant." *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017). Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, however, "[t]he similarity between comparators . . . must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, N.C., 545 F.3d 260, 265 (4th Cir. 2008). "Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination."

*Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011) (internal quotation marks omitted).  *Swaso v. Onslow Cty. Bd. of* Educ., 698 Fed. Appx. 745, 748.

Plaintiffs can also obfuscate the need for McDonald Douglas burden shifting by presenting direct evidence of discrimination.  Whether James Lynch uses direct or circumstantial evidence will depend on fact discovery, however, at this stage  Plaintiff, James Lynch's First Amended Complaint is sufficient.  The complaint  describes what is was like to work at Tasty Baking company, on a manufacturing factory floor where black people are treated differently than white people. ¶¶ 45, 49, 51 53 55, 56, 60, 64, 65, 66, 67, 69, 70, 73, 75, 76, 81, 84, 85, 94, 95, 96, 106, 140, 145, 168.  James Lynch identified by name and position, the primary harasser, Plant Manager, Jack Garrett. ¶¶ 3, 10, 11.  James Lynch describes the conduct of Jack Garrett.

- Defendant, Jack Garret was out of control and treated African American employees including James Lynch with violence, ridicule, scorn, and aggressive behavior.  ¶ 54.
- Defendant, Jack Garret and Defendant, Amber Bettie, Plaintiff, James Lynch was threatened with discipline and subjected to discipline. ¶ 61.
- Plaintiff was constantly subjected to disrespectful, abusive conduct and comments from Defendants including the individually named Defendants. ¶ 62.
- Defendant, Jack Garret was physically aggressive and stood close to James Lynch and yelled and cursed at James Lynch. § 63.
- Defendant, Jack Garret told James Lynch that he could end Lynch's employment if Lynch did not shut up and do what he was told. ¶ 64.
- Defendant, Jack Garret was physically aggressive toward James Lynch. ¶ 65.
- Plaintiff, James Lynch was terminated through false accusations from Defendant, Jack Garret and Defendant, Amber Bettie. ¶ 66.
- Defendant, Jack Garret and Defendant, Ambert Bettie began following James Lynch around the factory and accusing James Lynch of false accusations and subjecting James Lynch to false writeups, false suspensions and ultimately a false termination. ¶ 74.
- Plaintiff was ordered to shut the fuck up and get back to work or be replaced. ¶ 94.
- Plaintiff was informed that he was easily replaceable. ¶ 95.

- Defendant, Jack Garret made discriminatory comments that there was a million just like Plaintiff who would not act like pussies and that Plaintiff could be moved out if Jack Garret wanted. ¶ 96.
- Defendant, Jack Garrett subjected Plaintiff to lies intended to subject Plaintiff to disparate treatment.
- Defendant, Jack Garret informed Plaintiff that he better keep quiet about his disability and "just do your fucking job or you will be replaced." ¶106
- Defendant, Jack Garrett intentionally misled Plaintiff and other employees including a Shop Steward in his attempt to falsely justify the illegal conduct of Defendants. ¶ 107.
- Defendants intentionally lied about video footage which exonerated Plaintiff and refused to allow Plaintiff to even view the video footage. ¶ 108.
- Defendant, Jack Garret followed Plaintiff around and subjected Plaintiff to insults, abusive language, screaming, threats of violence, and intimidation on a daily basis so that Plaintiff could not escape the daily, nonstop, harassment. ¶ 138.

Accordingly, James Lynch complaint detailed the discrimination including (1) the name of the primary harasser, (2) the position of the primary harasser, which was Plant Manager, an upper level management position,  (3) the frequency of the harassment as occurring on a daily basis in a manger that made it impossible to escape.   James Lynch also described the way in which the black employees were treated  versus their similarly situated white employees.   James Lynch pled that Jack Garrett's conduct toward the black employees, including Plaintiff, was violent and aggressive and that there were threats of physical violence from Jack Garrett. ¶ 56, 138.  James Lynch described the way in which Jack Garrett spoke with threats of termination, cursing, telling Lynch to "shut the fuck up" calling Lynch a "pussy" and stating that there were a million just like Lynch, so Lynch meant nothing. ¶¶ 84, 95, 96, 97, 103, 104, 137, 140.   Lynch described Jack Garrett physically aggressive and stand too close to Mr. Lynch while yelling and cursing at Lynch. ¶ 63. On other occasions Jack Garrett screamed violent threats. ¶ 138.  James Lynch

described the way in which Jack Garrett spoke to him and the black employees, on a daily basis. James Lynch pled that Jack Garret told Lynch to "shut the fuck up."  Jack Garrett said to Lynch, ""just do your fucking job or you will be replaced."  Jack Garrett called James Lynch a "pussy."  Jack Garrett said to James Lynch, "there are a million just like you."  Jack Garrett said, "you are replaceable."  ¶¶ 94, 95, 96, 104, 105, 106.

James Lynch then identified by full name nine witnesses who worked with Lynch, at the Philadelphia location, under Jack Garrett, and the same corporate structure for reporting the discriminatory conduct.  Written reports of discriminatory conduct were submitted by these nine individuals to Haley Angeline and Christine Johnston.  James Lynch also identified by name Anita Fields, who was the Chief Shop Steward for the union in which James Lynch was a member. ¶ 53, 54, 76, 77, 107.  James Lynch specifically identified the following witnesses to Jack Garrett's and Ambert Bettie's conduct:   (1) Jose Ayala, (2) Tiara Williams, (3) Anita Fields, (4) Yvonne Lafayette, (5) Jocelyn Marshall, (6) Khalil Williams, (7) Regina Bradley, (8) Kaia Yero, and (9) Franklin Jones. ¶¶ 69, 70.   These individuals not only witnessed daily discrimination and harassment from Jack Garrett, but reported the harassment, in writing, through written reports of discrimination about Jack Garrett and Amber Bettie. ¶¶ 69, 70, 71.

- Plaintiff identified the people who reported the discrimination.  ¶¶ 68, 69, 70, 71, 72, 73, 74.
- Plaintiff identified the name of the Chief Shop Steward who helped them write the reports of discrimination.  *Id*.
- Plaintiff identified the names of the who received the reports of discrimination on behalf of the Defendants. *Id*.
- Plaintiff described the way in which the work environment got more hostile after the reports of discrimination.  *Id*.

The reports of discrimination and harassment in the workplace were received by Haley Angeline and Christine Johnston, both of whom worked in the human resources department and

both were familiar with Jack Garrett. ¶¶ 69, 70, 71, 72 and 73.  In addition to the nine (9) individuals named who filed reports of discrimination naming Jack Garrett as the harasser, Plaintiff pled there are others, at least fifteen people who engaged in protected activity by asking Defendants for help with Jack Garrett and Amber Bettie. ¶ 70, 71, 72.  Plaintiff added details about the specific kinds of reports these fifteen employees used.  There was two types of written reports: (1) union grievances and (2) written reports to Defendants' Human Resources Department. ¶¶ 71 and 72.  Plaintiff also pled that the white employees for Tasty Baking Company, assigned to the same location under the same management hierarchy, were not treated the way in which the black employees were treated.  ¶¶ 45, 46, 48, 49,140, 163.

Plaintiff's First Amended Complaint creates the inference of discriminatory intent: (1) through a pattern of discriminatory conduct all involving the same Plant Manager, Defendant, Jack Garrett.  See *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017).  (We "may infer discriminatory intent from evidence of a general pattern of racial discrimination in the practices of a defendant.").   Plaintiff's First Amended Complaint details Garrett's repeated threats, aggressive, physical intimidation, cursing, screaming obscenities, false accusations, threats of discipline and termination, belittlement in telling black employees including James Lynch that they are "replaceable," there is a million like them, they are expendable. ¶¶ 83, 84, 94, 95, 96, 104, 105, 106.   Garrett's conduct was reported in writing though the grievance process and written reports to Human Resources Directors, Christine Johnston and Haley Aneline.   The reports resulted in the discrimination and harassment getting worse.   ¶¶ 52, 53, 54, 55, 57, 58 59, 60, 61, 71, 72, 73 83.   The fifteen (15) or more black employees who grieved and reported Jack Garrett's conduct, included Chief Shop Steward (Anita Fields, ¶¶ 53 and 69) who grieved, reported and assisted others in reporting.  Fifteen people and their written reports

and allegations can be the kind of direct evidence to which courts sometime refer.   If James Lynch can establish a direct evidence case, it would obviate the need to establish the McDonald Douglas prima facie elements. *See Burns v. USI Ins. Servs., LLC*, 2022 U.S. Dist. LEXIS 48262, *9 ("Assuming arguendo that Plaintiff was able to come forward with direct evidence of employment discrimination, then she would not be required to establish the elements of a prima facie case of employment discrimination in violation of the ADA under the *McDonnald Douglas* burden shifting analysis. *Wolski v. City of Erie*, 900 F. Supp. 2d 553 (W.D. Pa. 2012).).

Once Plaintiff establishes a prima facie case under McDonald Douglas, the burden shifts and Defendants can satisfy a relatively light burden of production by presenting a so-called legitimate reason for the adverse employment action(s).  Plaintiff can prevail by proving by a preponderance of the evidence that Defendants reasons are pretextual.  The First Amended Complaint touches upon the pretext Defendants plan to use.  Plaintiff believes his argument in this regard is compelling, however, Plaintiff need not make it now.  If a plaintiff can demonstrate that a discrimination case will require arguing pretext to resolve, the complaint is legally sufficient.  *See Johnson v. Montgomery Cnty. Ct. of Common Pleas*, 2022 U.S. Dist. LEXIS 108127, *10 ("The Third Circuit has established that, at this motion to dismiss stage, Plaintiff is "not obliged to choose whether [he] is proceeding under a mixed-motive or pretext theory, nor is [he] required to establish a prima facie case, much less to engage in the sort of burden-shifting rebuttal that McDonnell Douglas requires at a later stage in the proceedings." *Connelly*, 809 F.3d at 791.").

Accordingly, in reviewing a motion to dismiss discrimination claims, the burden need never shift.  If Plaintiff has pled facts which appear to support the inference of discriminatory intent, Plaintiff's Complaint must survive and Defendants' Motion must be denied.

**B.  The First Amended Complaint (Doc. 14) includes detailed allegations linking Plaintiff's protected activity to the adverse employment actions.**

A Title VII retaliation claims turns on whether a plaintiff can plausibly allege that (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) the protected activity and adverse action were causally connected. *See Moore*, 461 F.3d at 340-41. The first element—protected activity—can be established through allegations of "informal protests of discriminatory employment practices such as making complaints." *See Excellent v. Bryn Mawr Tr. Co.,* No. 21-cv-03632, 2022 U.S. Dist. LEXIS 196037, 2022 WL 15524949, at *3 (E.D. Pa. Oct. 27, 2022).  The second element—materially adverse action—can be established through allegations of an "action . . . that would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Moody v. Atl. City Bd. of Educ*., 870 F.3d 206, 220 (3d Cir. 2017). The third element—causal connection—can be established if the "temporal proximity" between the alleged protected activity and adverse action is "unusually suggestive," *see Daniels v. Sch. Dist. of Phila*., 776 F.3d 181, 196 (3d Cir. 2015) (*quoting LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)), and also by a "broad array of evidence" supporting an "inference of retaliatory animus," *see LeBoon*, 503 F.3d at 232-33 (*quoting Farrell v. Planters Lifesavers Co*., 206 F.3d 271, 284 (3d Cir. 2000)).  i 2023 U.S. Dist. LEXIS 4575, *9.

Plaintiff, James Lynch can satisfy the first two elements easily.  He engaged in protected activity several times, both verbally and in writing.  It has long been established in the Third Circuit that protected activity under Title VII, the ADEA, and the ADA can include a variety of reports from informal verbal reports to formal written reports.  *See Abramson v. William Paterson College*, 260 F.3d 265, 287-288

"We have previously noted … "we do not require a formal letter of complaint to an

employer or the EEOC as the only acceptable indicia of the requisite 'protected conduct' . . . ." *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995) (*citing Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (explaining that acceptable forms of **protected activity** under Title VII's analogous opposition clause include formal charges of discrimination "as well as informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges")).

Plaintiff, James Lynch sufficiently pled protected activity when reported the discrimination (1) verbally, (2) through written grievances, and (3) formal written reports. ¶¶ 52, 53, 54, 55, 56, 57, 58, 59, 60, 61. Plaintiff's reports were submitted to Defendants through the union with the assistance of Chef Shop Steward, Anita Fields. ¶¶ 53 and 69. They were subnmitted directly to human resources including Haley Angeline and Christine Johnston. ¶¶ 54, 55, 57, 58, 59, 71, 72, 92.

The First Amended Complaint details a causal connection between the protected activity and the conduct that would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 220 (3d Cir. 2017). Plaintiff, James Lynch pled that Jack Garrett has demonstrated a pattern of retaliatory conduct including false accusations resulting in disciplinary action, physical harassment in following James Lynch while Lynch works, subjecting Lynch to comments about his protected activity, including "I can do whatever I want" and "I am in charge." ¶¶ 59, 60, 61. After Lynch's reports to human resources and Haley Angeline and Christine Johnston, Defendant, Jack Garrett became physically aggressive and got in James Lynch's face while yelling curses and insults. ¶ 63. After Lynch's protected activity, Defendant, Jack Garrett got in James Lynch's face and stated, "you need to shut up and do what you're told." ¶ 64. Garrett often addressed Lynch in an abusive manner, with comments like, "you need to shut the fuck up and do what you're told. ¶¶

64 and 94.   Jack Garrett's conduct demonstrates a pattern and practice of retaliation in the
same manner to which Plaintiff was subjected.   ¶¶ 85, 104, 120, 127.

- The people who reported the discrimination and harassment in the workplace from Defendant, Jack Garret and Defendant, Ambert Bettie were targeted and subjected to conduct that was also described by James Lynch and many other employees. ¶73.

- Defendant, Jack Garret and Defendant, Ambert Bettie began following James Lynch around the factory and accusing James Lynch of false accusations and subjecting James Lynch to false writeups, false suspensions and ultimately a false termination. ¶74.

- James Lynch was accused of things he did not do by a crew of managers who established a pattern and practice of discrimination toward African American employees and then retaliation if the employees engaged in protected activity and reported the discrimination. ¶75.

Plaintiff's detailed First Amended Complaint includes allegations that Jack Garrett made
retaliatory comments including, "I can do what I want because I am in charge," (2) followed
James Lynch and subjected him to false writeups and discipline, (3) changed his own work
habits to interfere with, follow, take pictures, and intimidate, (4) aggressive yelling and threats,
and (5) same conduct directed at others who engage in protected activity.

Plaintiff, James Lynch's First Amended Complaint is legally sufficient as to all
retaliation claims.

## C.  Plaintiff's ADA claims are well pled and raise a reasonable expectation that discovery will reveal the necessary elements.

Plaintiff, James Lynch described a physical impairment that substantially limits one or
more major life activities.   ¶¶ 89, 90, 91, 92, 93.   Mr. Lynch was shot in the left knee with a
handgun, which rendered Mr. Lynch's knee permanently injured. ¶¶ 98, 99.   Mr. Lynch's
chronic knee injury substantially limits major life activities like running and jogging, to name
some of them. ¶¶ 98 and 101.   Lynch first requested intermittent medical leave under the
FMLA, however, this first request was within his first year of employment so he did not yet

qualify for FMLA time.  ¶¶ 97, 102, 104.  Plaintiff asked for reasonable accommodations by

going to human resources and notifying both Haley Angeline and Christine Johnston about his

medical needs and requests. ¶¶ 92, 93, 94, 95, 96, 97.   Defendants responded to Plaintiff's

requests for medical leave and reasonable accommodations through accusation, abuse, and

intimidation.  Plaintiff was told to stop faking an injury and get back to work. *Id*.  Jack Garrett

maintains a special resenting for employees with medical issues. ¶¶ 104,   Jack Garrett treated

Plaintiff, James Lynch like he treated the other employees who needed help or accommodations

due to a medical condition.   Defendant, Jack Garret said to Lynch:

- Defendant, Jack Garret made discriminatory comments that there was a million just
- like Plaintiff who would not act like pussies and that Plaintiff could be moved out if Jack
  Garret wanted. ¶ 96.
- Defendant, Jack Garret informed Plaintiff that he better keep quiet about his disability
  and "just do your fucking job or you will be replaced."  ¶ 106

James Lynch informed Jack Garrett and Amber Bettie about his medical condition and asked for

help.  ¶ 90.  Because of the chronic knee injury, Plaintiff asked to be able to take short breaks

during flare-ups.

- Plaintiff requested reasonable accommodations when Plaintiff notified Defendants that
  Plaintiff had a chronic injury and that Plaintiff sometimes needed to take short breaks
  during flareups and sometimes needed to take a day off of work.  ¶ 199.

Defendants responded to finding out about Plaintiff's injury and request for help by attacking

Plaintiff personally, baaed on his disability, and professionally, Plaintiff's job the threatened.

Garrett told Plaintiff to "stop being a pussy."  Garrett indicated Plaintiff could be fired if he did

not stop. *Id*.  Garrett told Lynch  to "keep quiet" (about your injury) and do your fucking job." ¶

105.  Jack Garrett singled out Jose Ayala, Anita Fields, and Tiara Williams, three other

employees who requested FMLA and reasonable accommodations.  Jack Garrett targeted  Tasty

Cake employees who requested reasonable accommodation. ¶ 69.  *See Johnson v. Fed. Express*

*Corp.*, No. 1:12-CV-444, 2014 U.S. Dist. LEXIS 25861, at *22-23 (M.D. Pa. Feb. 28, 2014) ("… evidence of an employer's "culture" may constitute circumstantial evidence of discrimination. *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 333 (3d Cir. 1995). In particular, the work environment is relevant for a factfinder to determine that the FedEx's decision to pay Johnson less than Pooler gave rise to an inference of discrimination and FedEx's asserted legitimate, non-discriminatory reasons were merely pretext for discrimination. *See Antol v. Perry*, 82 F.3d 1291, 1302 (3d Cir. 1996); *Williams v. Pa. State Police*, 481 F. Supp. 2d 424, 430 (W.D. Pa. 2007) ("[I]t is beyond question that evidence sufficiently reflecting harassing or discriminating bias is admissible to prove intent or motive, the existence of a hostile environment and pretext." (citation omitted)). As such, Johnson need not allege hostile work environment claims in order to present evidence of the work environment  at the York station.

James Lynch requested short breaks during times when he suffered from a flareup.  when he experienced flareups due to his permanent left knee injury. Plaintiff pled these facts in his complaint in paragraphs 47, 48, and 49, however, Mr. Lynch can provide additional information to add context and detail to these claims.  Also, Jack Garrett was known to specifically target employees, all of them racial minorities, who reported that they suffered from some kind of chronic injury and asked for help.  Employees other than James Lynch who reported to Tasty Cake that Jack Garrett targeted them with discriminatory conduct included (1) Jose Ayala, (2) Tiara Williams, and (3) Anita Fields.  James Lynch has personal knowledge regarding all three people as they all worked at the same location, during overlapping time periods, and held positions that required interaction.

**CONCLUSION**

For the reasons described above, Plaintiff's First Amended Complaint is sufficient and Defendants' Motion to Dismiss should be denied.

Notwithstanding, Plaintiff can still amend to amplify the pleading in good faith.  The day before Plaintiff's counsel left his former firm, permanently, a meeting was held with Anita Fields. This was their first-time meeting.  This is relevant because of the information within Anita Field's care, custody or control including written reports that James Lynch submitted. James Lynch and others discriminated by Jack Garret, inter alia.  Counsel met with Anitra Fields for a second time, weeks later.  Ms. Fields spent years helping Tasty Cake employees with reports of discrimination and grievances.  Ans Ms. Fields is a good historian and record keeper. Counsel is in possession of almost every report of discrimination involving Jack Garrett and Amber Bettie referenced in the First Amended Complaint.  Most have been produced to defense counsel already.  .  Accordingly, Plaintiff is still in a position to amend his complaint and provide more detail about each report, including dates of each report and event described therein, people involved, and conduct at issue.  Plaintiff believes these reports are a matter for fact discovery, because the current complaint is sufficient, however, because Plaintiff cab still amend in good faith, and add relevant facts to the case, Plaintiff suggests that dismissal with prejudice is not yet appropriate.

**DEREK SMITH LAW GROUP, PLLC**

By:    /s/ Seth D. Carson          
       Seth D. Carson, Esquire
       1628 Pine Street
       Philadelphia, Pennsylvania 19103
       Phone: 215.391.4790
       Email:

DATE: April 28, 2024

**<u>CERTIFICATE OF SERVICE</u>**

Plaintiff's above Memorandum of Law and Fact in Opposition to Defendants' Motion to Dismiss was filed using the Court's ECF system and served upon Defendants by way of ECF.

Clark Whitney, Esquire (Pa. ID 201052)
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2800 (phone)
clark.whitney@ogletree.com
*Attorneys for Defendant Tasty*

**DEREK SMITH LAW GROUP, PLLC**

By:    /s/ Seth D. Carson_____
Seth D. Carson, Esquire
1628 Pine Street
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email:

DATE: February 28, 2024